## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NORTH DAKOTA

| | | |
|---|---|---|
| Walter W. Cartwright, III, | ) | |
| | ) | |
| Plaintiff, | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| vs. | ) | |
| | ) | |
| Dave Krabbenhoft, et al., | ) | |
| | ) | Case No. 1:22-cv-025 |
| Defendants. | ) | |

The plaintiff, Walter W. Cartwright, III ("Cartwright"), is an inmate at the North Dakota State Penitentiary ("NDSP"). He initiated this action pro se and in forma pauperis. The Court has referred this matter to the magistrate judge for an initial review as mandated by 28 U.S.C. § 1915A. For the reasons that follow, I recommend the dismissal of Cartwright's first, second, and third claims as well as his claims for monetary damages against defendants in their official capacity. I further recommend that the Court (1) permit Cartwright to proceed with his fourth claim, and (2) direct the Clerk's office to effectuate service of Cartwright's complaint.

**I.     BACKGROUND**

This action arises out of alleged delays in securing for Cartwright medical treatment to address hernias on his left and right sides. The following facts are taken from Cartwright's complaint. (Doc. No. 10). They are presumed to be true for the purposes of this order.

According to Cartwright, he noticed a bulge in his lower abdomen near his groin in mid-to-late July 2021. (Id.). He presented to the NDSP's medical unit, where, following an examination, he was advised that he would not be taken to an outside medical provider unless and until he was vaccinated, presumably for COVID-19. (Id.). He had previously refused to be vaccinated.

1

Concerned about his health and seeking relief form his growing discomfort, he relented. (Id.). After receiving his second dose of the vaccine in late August 2021, he was taken from the NDSP to an outside medical provider for an ultrasound. (Id.). He was eventually diagnosed with two hernias–an incarcerated inguinal hernia on his right sight and another hernia on his left side–and underwent corrective surgery. (Id.). By his calculation approximately six months passed from the date on which he first presented to the NDSP's medical unit until he was scheduled for surgery. (Id.). In the interim, staff provided him with two hernia trusses or belts, both of which were reportedly ill fitting and ineffective. (Id.).

Cartwright initiated the above-entitled action on February 11, 2022 with the submission of an application to proceed in forma pauperis, which the undersigned granted, and a complaint.[1] He is endeavoring to sue the following individuals in their official and individual capacities pursuant to 42 U.S.C. § 1983: Director Dave Krabbenhoft, Warden James Sayler, Renee Morris, Patricia Youngbird, Duffie Morris, Molly Goebel, Morgan Bosch, Sean Nelson, Stephanie Waloch, Naomi Edington, Cayla, Marylee, Tamera, and Randy McGonigal. He claims that they: (1) treated him differently than a similarly situated inmate in violation of the Fourteenth Amendment's equal protection clause; (2) failed to timely address his grievances in violation of the First Amendment; (3) failed to "fix the wrong" and in so doing subjected him to cruel and unusual punishment in violation of the Eighth Amendment; and/or (4) exhibited deliberate indifference to his serious medical needs in violation of the Eighth Amendment. He is seeking both injunctive relief and an award of monetary damages.

---

[1] The Clerk's office received an incomplete "PLRA packet" from Cartwright on February 11, 2022. (Doc. No. 1). It received a completed "PLRA packet" on February 17, 2022. (Doc. No. 3).

## II.  STANDARD GOVERNING INITIAL REVIEW

When a prisoner proceeding in forma pauperis seeks to sue a governmental entity, officer, or employee, the Prison Litigation Reform Act of 1995 ("PLRA") requires the court to conduct an early screening of the complaint to weed out claims that clearly lack merit with the hope this will lessen the burdens imposed by the ever-rising numbers of prisoner suits, which too often are frivolous and without merit.  Jones v. Bock, 549 U.S. 199, 202-03 (2007); Woodford v. Ngo, 548 U.S. 81, 83-84 (2006).  In conducting the screening required by 28 U.S.C. § 1915A, the court is required to identify any cognizable claims and to dismiss the complaint, or any part of it, that is frivolous, malicious, fails to state a claim, or seeks monetary relief from an immune defendant.

The PLRA does not impose any heightened pleading requirements.  Jones, 549 U.S. at 211-12.  Consequently, in order to state a cognizable claim, the complaint need only meet the minimum requirements of Fed. R. Civ. P. 8(a)(2), which are that it contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam).

The court is obligated to construe a *pro se* complaint liberally and hold it to a less stringent standard than what normally would be required of attorneys.  Id.; see also Federal Express Corp. v. Holowecki, 552 U.S. 389, 402 (2008); Solomon v. Petray, 795 F.3d 777, 787 (8th Cir. 2015). This does not mean that the court must accept everything or anything that is filed by *pro se* prisoners, however.  In enacting the screening requirement, Congress obviously expected it to be more than an a ritualistic exercise and that courts would only allow to go forward those claims that are cognizable, that seek relief from a non-immune party, and that are not obviously frivolous or malicious.

To meet the minimal pleading requirements of Rule 8(a)(2) for stating a cognizable claim, something more is required than simply expressing a desire for relief and declaring an entitlement to it. See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556 n.3 (2007) ("Bell Atlantic"). The complaint must state enough to "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. at 93 (quoting Bell Atlantic, 550 U.S. at 555). And, even though the complaint is to be liberally construed, it must also contain enough to satisfy Bell Atlantic's "plausibility standard." E.g., Ventura-Vera v. Dewitt, 417 F. App'x 591, 592, 2011 WL 2184269, *1 (8th Cir. 2011) (unpublished per curiam) (citing Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2007) for the appropriate post-Bell Atlantic standard); see also Stone v. Harry, 364 F.3d 912, 914 (8th Cir. 2004) (*pro se* complaints must allege sufficient facts to state a claim). Complaints that offer nothing more than labels and conclusions or a formulaic recitation of the elements are not sufficient. See id. Frivolous claims are those that are clearly baseless, fanciful, fantastic, or delusional. See Denton v. Hernandez, 504 U.S. 25, 32-34 (1992).

To state a cognizable claim, a plaintiff must normally allege a violation of a right secured by the Constitution or the laws of the United States and that the alleged deprivation was committed by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988); Walker v. Reed, 104 F.3d 156, 157 (8th Cir. 1997). Even under liberal pleading standards, a *pro se* litigant, at the very least, must invoke rights under the Constitution or federal law in order to plead a cognizable claim. Walker, 104 F.3d at 157-58.

Also, even though the court is obligated to construe *pro se* complaints liberally, the court is not required to ignore facts that are pled by a prisoner when they undermine the prisoner's claim. The court may accept as true all facts pled in the complaint and conclude from them that there is no

4

claim as a matter of law. E.g., Thompson v. Ill. Dep't of Prof'l Regulation, 300 F.3d 750, 753-54 (7th Cir. 2002) (citing other cases). Also, liberal construction does not mean the court is under an obligation to re-write the complaint. Snow v. DirecTV, Inc., 450 F.3d 1314, 1320 (11th Cir. 2006).

### III. DISCUSSION

#### A  Claims

##### 1. Claim One - Equal Protection

The basis for Cartwright's equal protection claim is that he was not afforded treatment in as timely a fashion as another similarly situated inmate, Thomas Vermilya ("Vermilya"). Specifically, Cartwright asserts:

> [A]nother inmate by the name of Thomas Vermilya #16835 also had a hernia but was not required to wait for a ultrasound appointment. After his visit with medical at N.D.S.P his next visit was with a surgeon for a consultation. This violation was harmful to plaintiff, if the plaintiff would of been given the same treatment, what equals to two months would have been trimmed of his waiting for surgery . . . .
> Plaintiff also argues that after his surgery while he was in the infirmary, medical provided him nothing for his pain. It wasn't untill several days later threw the mail did he find out that he had been prescribed pain meds. Inmate Thomas Vermilya #16836 was given pain meds. I wrote the administration about this. I have either exact copies of my resident request, sick call, or grievance. If not I've copied word for word in my journal.

(Doc. No. 10) (errors in original).

"The Fourteenth Amendment requires that the government 'treat similarly situated people alike,' a protection that applies to prison inmates." Murphy v. Missouri Dep't of Corrections, 372 F.3d 979, 984 (8th Cir. 2004) (quoting Rouse v. Benson, 193 F.3d 936, 942 (8th Cir.1999)); City of Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 439 (1985). Where a prison inmate has neither alleged that he is a member of a protective class or that a fundamental right has been violated, he must demonstrate that similarly situated individuals were intentionally treated

5

differently without a rational relationship to any legitimate penal interest. See Nolan v. Thompson, 521 F.3d 983, 989-90 (8th Cir. 2008) (citing Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000)); Phillip v. Norris, 320 F.3d 844, 848 (8th Cir. 2003); Campbell v. Quiros, No. 3:17-CV-946 (CSH), 2018 WL 888723, at *6 (D. Conn. Feb. 13, 2018) (recognizing that an inmate may "state an equal protection violation under the 'class of one' theory").

Having reviewed Cartwright's complaint, the undersigned finds that Cartwright has not articulated a cognizable class-of-one equal protection claim. First, decisions regarding the appropriate course of treatment arguably involves discretionary decision making based on a vast array of subjective, individualized assessments. Discretionary decision making generally does not constitute the basis for a cognizable constitutional claim. See Engquist v. Oregon Dep't of Agr., 553 U.S. 591, 603 (2008) ("There are some forms of state action, however, which by their nature involve discretionary decisionmaking based on a vast array of subjective, individualized assessments. In such cases the rule that people should be "treated alike, under like circumstances and conditions" is not violated when one person is treated differently from others, because treating like individuals differently is an accepted consequence of the discretion granted."); McDonald v. Golden, No. 1:17CV00066 DPM/JTR, 2018 WL 4001278, at *4 (E.D. Ark. July 24, 2018), report and recommendation adopted, No. 1:17-CV-66-DPM, 2018 WL 3999699 (E.D. Ark. Aug. 21, 2018) ("Due to the inherently discretionary and individualized nature of the decisions made by state actors charged with managing and caring for prisoners, courts have recognized that prisoners' class-of-one claims alleging arbitrary treatment by prison officials generally are not cognizable under *Engquist*."); Dawson v. Norwood, No. 1:06-CV-914, 2010 WL 2232355, at *2 (W.D. Mich. June 1, 2010) ("District courts have consistently rejected class-of-one theories in the context of prison

officials making discretionary decisions concerning inmates."); see also Cox v. Wexford Health Sources, Inc., No. 16-CV-137-SMY, 2016 WL 2766679, at *4 (S.D. Ill. May 13, 2016) ("Plaintiff alleges that five other prisoners were authorized to undergo the hernia surgery that was denied to him. At this early stage, taking Plaintiff's factual allegations as true, he has sufficiently alleged a class-of-one equal protection claim that survives threshold review."). Second, it is not entirely clear that Cartwright and Vermilya were similarly situated as there is nothing in the complaint to indicate that the severity of their respective conditions was comparable. Third, it does not appear at first blush that Cartwright was treated that much differently than Vermilya as both were seen by an outside medical provider, received a surgical consult, and were scheduled for surgery. Fourth, Cartwright's complaint–that he was scheduled for an ultrasound whereas Vermilya was not–has an air of frivolity. In Cartwright's words, the purpose of conducting such an ultrasound was so that doctors could "better understand what was causing the large mass that was causing [him] so much pain." (Doc. No. 10). Thus, the suggestion that it was improper for NDSP staff to schedule an ultrasound for him in order to assist doctors in their diagnosis and treatment of him ventures into the realm of the absurd. For these reasons, I recommend that the Court dismiss this claim. I shall next address the viability of Cartwright's First Amendment Claim.

    **2.    Claim Two - First Amendment**

"A prisoner has the right under the First Amendment to petition for redress of grievances under a prison's grievance procedures." Santiago v. Blair, 707 F.3d 984, 994 (8th Cir. 2013) (internal quotation marks and alternation omitted); see also Gonzalez v. Bendt, 971 F.3d 742, 744–45 (8th Cir. 2020) (reiterating that the filing of a prison grievance is protected First Amendment activity). Cartwright asserts that McGonigal denied him this right by twice refusing

to accept his grievances and that Youngbird denied him this right by taking too long (approximately two months) to respond to his grievances. He also takes Goebels to task for "not following the guidelines set forth by Congress . . . to ensure the least instrusive means necessary to correct the violation of a federal right" and for "permit[ting the] NDSP to operate their grievance system without time limits governing staffs responses." (Doc. No. 10).

Having reviewed the pleadings, the undersigned finds Cartwright's claims regarding McGonigal to be specious. Yes, Cartwright alleges in his complaint that McGonigal twice refused to accept his grievances. However, he then goes on to state that McGonigal ultimately relented and accepted his grievances, albeit under threat of litigation.

> Plaintiff argues that namely Randy McGonigal his caseworker and Patricia Youngbird the administrator of infirmary both obstructed his attempts to exhaust his administrative remedies. One two separate occasions the plaintiff attempted to submit a grievance and Randy McGonigal refused to accept them. The first one he refused to accept, the plaintiff ask him if he'd put it in writing. The defendant refused. On the second attempt that was originally refused, the defendant changed his mind only after the plaintiff informed him that a he had spoke to a attorney and that a civil suit was to follow. As it turns out, the plaintiff was waiting for a answer on several grievances concerning medical complications that N.D.S.P's infirmary's administrator was in charge of answering, for several months he'd been waiting. It was only after the plaintiff informed Randy McGonigal of a civil suit, that the very next day Randy McGonigal informed him that Patricia Youngbird is now back at work and will reply to my more than two month old grievances. The plaintiff had followed up on those grievances thru a resident request and another grievance, only to be told that Patricia Youngbird was out of the office. The plaintiff argues that he holds tangible record from Randy McGonigal that informs the plaintiff that the must be patient on his grievances. Plaintiff had this conversation on January 26, 2021. So what the plaintiff is being told that Patricia Youngbird was out of the office for about two months . . . .

(Doc. No. 10) (errors in origina). The takeaway from this is that Cartwright, by his own admission, was able to file his grievances.

In any event, Cartwright's claim regarding the grievance system and/or the processing of

his grievances are not actionable under the guise of § 1983 action. The United States Constitution creates no entitlement to grievance procedures or access to any such procedures voluntarily established by a state. See Buckley v. Barlow, 997 F.2d 494, 495(8th Cir. 1993) (no constitutional violation in failing to process all of the grievances submitted by the prisoner); Flick v. Alba, 932 F.2d 728, 729 (8th Cir. 1991) (per curium) ("When the claim underlying the administrative grievance involves a constitutional right, the prisoner's right to petition the government for redress is the right of access to the courts, which is not compromised by the prison's refusal to entertain his grievance."); Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994) (opining that the Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state); see e.g., Dickens v. Taylor, 464 F.Supp.2d 341, 354 (D. Del. 2006) (concluding that a prisoner "cannot maintain constitutional claims based upon an inadequate grievances system, that grievances were denied, that he was not provided a hearing upon the filing of a grievance, or that his grievances were not addressed."). It therefore follows that Cartwright's ability or lack thereof to file grievances or the time taken to respond to his grievances does not constitute the basis for cognizable constitutional claim. The Court should therefore dismiss this claim.

### 3. Claim Three

Cartwright next claims that the Eighth Amendment's prohibition of cruel and unusual punishment was violated by some defendants through their action and by other defendants through their inaction. Specifically, he asserts:

> Patricia Youngbird, Stephanie Walach, Cayla, Sean Nelson, Tamera, Duffie Morris, Morgan Bosch, Renee Morris, all had direct participation in the wrong or know about the wrong but did not try to stop or fix it. These are defendants I remember seeing personally
>
> Naomi Edington and Marylee also participated in the wrong but i don't believe that

9

> I've met him.
>
> Dave Krabbenhoft and James Sayler failed to oversee the people who caused the wrong, for example, by hiring unqualified people or failing to adequately train the staff or create or maintain a policy or custom that allowed the wrong to occur.

(Doc. No. 10) (errors in original).

This claim is both vague and conclusory. In complaining generally about the "the wrong," Cartwright fails to identify or otherwise describe "the wrong" that defendants allegedly committed. If "the wrong" is the alleged deliberate indifference to his medical needs, then this claim is duplicative of his fourth claim, which I will address below. If "the wrong" pertains to the NDSP's grievance procedures or how his grievances have been handled by NDSP staff, this claim is not of a constitutional dimension for the reasons discussed above. For these reasons, Cartwright's assertions regarding "the wrong" does not constitute a cognizable claim and may be dismissed.

### 4. Claim Four

Cartwright finally claims that defendants have been deliberately indifferent to his serious medical needs. In so doing he asserts that defendants allowed him to needlessly suffer and otherwise placed his life at great risk by making him wait an inordinate amount of time for an ultrasound, the results of the ultrasound, a consult with a surgeon, and surgery. He further assert that defendants failed to provide him with any accommodations, e.g., a "lay-in from work" or a bottom bunk, or provide him with any prescription strength analgesics either before or after surgery. Finally, he asserts that defendants have failed to provide him with appropriate post-operative care and appropriately address his concerns that his hernias have returned.

The Eighth Amendment's proscription against cruel and unusual punishment imposes a duty upon prison officials to take reasonable measures to guarantee the safety of prison inmates. This duty to safeguard also embodies the principle expressed by the Court in <u>Estelle v. Gamble</u>, 429 U.S.

97 (1976), forbidding prison officials from demonstrating deliberate indifference to the serious medical needs of inmates. Estelle, 429 U.S. at 104. A plaintiff states a cognizable claim under 42 U.S.C.A. § 1983 when his complaint, construed liberally, alleges facts which show that the defendant was "deliberately indifferent" to the plaintiff's "serious medical needs" and caused the plaintiff "unnecessary and wanton infliction of pain." Estelle, 429 U.S. at 104.

Cartwright's assertions, when read in a light most favorable to him, arguably constitute the basis for colorable claim for relief for the purposes of the undersigned's initial review. Consequently, the undersigned recommends Cartwright be permitted to proceed with his claim for deliberate indifference.

### B. Defendants

#### 1. Official Capacity Claim for Monetary Damages

The damages claims against the defendants in their official capacities are barred for two reasons. First, state officials sued in their official capacities for money damages are not "person[s]" subject to suit under § 1983. See Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989); Furthermore, official-capacity claims for damages against state officials are barred by the Eleventh Amendment to the United States Constitution. Id.; Kentucky v. Graham, 473 U.S. 159, 169 (1985) ("This [Eleventh Amendment] bar remains in effect when State officials are sued for damages in their official capacity."). Consequently, it is the undersigned's recommendation that the court dismiss Cartwright's claim for monetary damages against defendants in their official capacity.

#### 2. Molly Goebel

The only reference to Goebel in Cartwright's complaint is in conjunction with his second claim. For the reasons articulated above, Cartwright's second claim is subject to dismissal. Consequently, there is no reason to include Goebel in what remains of this matter and she should

11

be dismissed from this action.

### IV.     CONCLUSION AND RECOMMENDATION

For the reasons discussed above, I recommend that the court dismiss Cartwright's first claim, second claim, third claim, and claims for damages against defendants in their official capacities. I further recommend that Cartwright be permitted to proceed with his fourth claim and that the court direct the Clerk's office to effectuate service of Cartwright's complaint.

### NOTICE OF RIGHT TO FILE OBJECTIONS

Pursuant to D.N.D. Civil L.R. 72.1(D)(3), Cartwright shall have until May 20, 2022, to file objections to this Report and Recommendation. Failure to file appropriate objections may result in recommended action without further notice or opportunity to respond.

Dated this 2nd day of May, 2022.

*/s/ Clare R. Hochhalter*
Clare R. Hochhalter, Magistrate Judge
United States District Court